UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 8MINUTE SOLAR HOLDINGS LLC, <br><br> Plaintiff, <br><br> v. <br><br> VIRGINIA TRANSFORMER CORP., <br><br> Defendant. <br><br> AND RELATED CROSS-CLAIMS | Case No. 1:25-CV-07837-KPF <br><br> **ORDER REGARDING AGREED ESI PROTOCOL** |

**STIPULATED ORDER REGARDING THE PROTOCOL FOR PRODUCING DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

To expedite the flow of discovery material and to facilitate the consistency in the format of the documents to be produced by the Parties in this case, by and through their respective counsel, and pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, hereby stipulate and agree to the terms of this Stipulated Order Regarding the Protocol for Producing Documents and Electronically Stored Information ("ESI Protocol").

**I.    GENERAL PROVISIONS**

1.    The Federal Rules of Civil Procedure will govern discovery, and no provision herein alters any provision of the Federal Rules of Civil Procedure, local rules, or applicable law. The terms of this Order shall be construed to ensure the cost-efficient and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, local rules, and applicable law.

1

2.      Nothing in this Order alters a Party's rights, obligations, and responsibilities under the Federal Rules of Civil Procedure, local rules, or applicable law, nor does anything in this Order impose additional burdens beyond those imposed by such rules or applicable law.

3.      A Producing Party shall not produce ESI in a format not requested or agreed to by the Requesting Party. If an issue arises, the issue will only be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

## II.    DEFINITIONS

1.      "Action" shall refer to the above-captioned civil action, including any appellate proceedings.

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

3.      "Hard-Copy Document" means Documents existing in paper form at the time of collection.

4.      "Electronic Document or Data" means Documents that are in electronic form at the time of collection.

5.      "Electronically stored information" or "ESI," as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

6.      "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

7.      "Load File" is an electronic file that can assist in loading an electronic production set into a Receiving Party's document review platform.

8.      "Metadata" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information relating to the file path, organization of, or access to the native file within a database, virtual folder, or other directory, (iii) the file name, (iv) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (v) structured data associated with a file that another information system uses or can use to access or identify the file, (vi) the version number of the file within a document management or other information system, (vii) information, such as Bates numbers, created during the course of processing Documents or ESI for production, and (viii) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or non-custodial data source from which it was collected.

9.      "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

10.     "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

11.     "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

12.     "Searchable Text" means the native text extracted from an Electronic Document and any OCR text generated from a Hard-Copy Document or electronic image.

13.     "Discovery Material" shall mean all items or information, regardless of medium or manner in which it is generated, stored, or maintained (including, among other things, disclosures, deposition testimony, transcripts and exhibits thereto, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

14.     "Non-Party" shall mean any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

15.     "Outside Counsel" shall mean (i) outside counsel who appear on the pleadings as counsel for a Party; and (ii) partners, associates, and staff of such counsel to whom it is reasonable necessary to disclose the information for this litigation.

16.     "Party" shall mean any party to this Action, including all of that party's officers, directors, employees, consultants, Experts, and Outside Counsel (and their support staffs).

17.     "Producing Party" shall mean a Party or Non-Party that produces Discovery Material in this Action.

18.     "Requesting Party" shall mean a Party that receives Discovery Material from a Producing Party.

## III.     PRESERVATION AND IDENTIFICATION OF ESI

1.     The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate.

2.     The Parties shall have a continuing obligation to take reasonable and proportional steps to identify and preserve custodial and non-custodial data sources that may contain information that is relevant to the claims and defenses in this litigation.

## IV.    <u>PRODUCTION FORMATS AND PROCESSING SPECIFICATIONS</u>

### A.    **Format**

1.    The Parties will produce ESI in a litigation database ready format including single page images, searchable text files, native files and Concordance database load files (.dat and .opt).

2.    All ESI shall be produced with applicable Metadata as specified in Appendix I, and Searchable Text extracted from the ESI. Redacted ESI, other than spreadsheet files which will be produced as redacted native files, will be produced as TIFFs with applicable Metadata and OCR'ed Searchable Text. Hard-Copy Documents will be scanned and produced as TIFFs, with applicable Metadata as set out in Appendix I, and OCR'ed Searchable Text.

3.    Images should be Bates numbered single-page, black and white, Group IV, 300 DPI TIFF format except for spreadsheet type files, source code, audio, and video files, and other file types that cannot be rendered into a usable printed form, which shall be produced in native format.  Upon request, if an original document contains color, and the color is necessary to review a document, it should also be produced in native format or as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image.  TIFFs/JPGs will show any and all text and images which would be visible to the reader using the native software that created the document.

4.    Document level text files named according to the beginning Bates value of the document should be provided containing original extracted text or OCR text when original text is not available or when document contains redactions.

5.    Unless otherwise agreed, each document will be produced in its entirety, with attachments and enclosures.  Documents not otherwise responsive will be produced if attached to a responsive document.

6.      If a document is produced in native format, a single page Bates stamped image slip-sheet stating the document has been produced in native format will also be provided.  Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either Party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith.

**B.      De-Duplication**

Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the content in those fields, even if all remaining content in the email is identical.  De-duplication will be done across the entire collection (global de-duplication) and the All Custodian field will list each Custodian, separated by a semi-colon, who was a source of that document.

**C.      Email Threading**

The Parties may avoid producing lower e-mail threads by producing the most inclusive e-mail thread.  If e-mail threading is used, the Producing Party shall employ commercially acceptable methods to deduplicate lower parts of an e-mail thread from the most inclusive thread.  The Receiving Party will receive the most inclusive e-mail thread, including all attachments.  When a thread includes a privileged e-mail, the Producing Party need only include one entry on the privilege log for the entire e-mail thread and need not log each e-mail contained in the thread

separately.

**D.      Metadata**

All ESI will be produced with a Concordance-delimited, database load file that contains the metadata fields listed in Appendix I, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.

**E.      Compressed File Types**

Compressed file types (i.e., .ZIP, .RAR, .CAB, .7Z) should be decompressed so that the lowest level document or file is extracted.

**F.      Structured Data**

To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer to discuss methods of production best providing all relevant information.  Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.  A document reference sheet shall be provided to describe the purpose of the database and meaning of all tables and column headers produced.

**G.      Encryption**

To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

**V.      <u>DOCUMENTS PROTECTED FROM DISCOVERY</u>**

The production of documents (including both paper documents and electronically stored information) subject to protection by the attorney-client and/or protected by the work-product,

joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection.

## VI.    **MODIFICATION**

This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

## VII.    **MISCELLANEOUS PROVISIONS**

1.    **Objections Preserved**.  Nothing in this Order shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents and ESI.

2.    **Technical Variances**.  Recognizing that each Producing Party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents or ESI. No Party shall unreasonably object to any such variance.

3.    **Reproduction as Natives**.  The Parties agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form, the Producing Party will assess such request in good faith on a case-by-case basis.

```
This agreement does not bind the Court or any of its personnel.
The Court can modify this stipulation at any time.  The Court
will retain jurisdiction over the terms and conditions of this
agreement only for the pendency of this litigation.
```

```
Dated:    January 21, 2026
          New York, New York
```

_____
United States District Judge

8

10815753